
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| CHEAP RIDES, INC., | CIV. 18- 4030 |
| Plaintiff, | |
| v. | COMPLAINT |
| WESTERN HERITAGE INSURANCE COMPANY and BURNS & WILCOX LTD., | |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Cheap Rides, Inc., through its undersigned counsel, and for this cause of action against Western Heritage Insurance Company and Burns & Wilcox Ltd., states and alleges as follows:

### THE PARTIES

1. Plaintiff, Cheap Rides, Inc. ("Plaintiff") is a South Dakota corporation with its principle place of business in Watertown, South Dakota.

2. Western Heritage Insurance Company ("Western") is a foreign corporation with its principle place of business outside the state of South Dakota.

3. Burns & Wilcox, Ltd., ("B&W") is a foreign corporation with its principle place of business outside the state of South Dakota.

### JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon the complete diversity of the parties and the amount in controversy exceeding $75,000.

## FACTS

5. In August of 2016, Cheap Rides & Cheap Rides Repairs was operating as a used car lot and auto repair shop in Watertown, South Dakota.

6. In August of 2016, Cheap Rides & Cheap Rides Repairs purchased a Garage & Dealers insurance policy, number AGP0864619, from Western ("the Policy").

7. The Policy was procured through B&W's Minneapolis office, with B&W acting as the wholesale broker and agent for the Policy.

8. The Policy was set to run from August 2016 through August of 2017.

9. In November of 2016, Cheap Rides & Cheap Rides Repairs changed its corporate structure, resulting in the creation of the Plaintiff, Cheap Rides, Inc.

10. In May of 2017, Plaintiff began reviewing its insurance policies to confirm that it had appropriate insurance coverage in place to protect its interests and to satisfy its creditors.

11. In early June of 2017, the Policy was updated to reflect that the named insured was changed to Plaintiff - Cheap Rides, Inc.

12. In May of 2017, Plaintiff requested to add coverage under the Policy for Physical Damage to its inventory of vehicles on its open lot.

13. One of Plaintiff's creditors requested that Plaintiff obtain this open lot coverage.

14. Plaintiff was also interested in this open lot coverage to protect its inventory from hail damage, a common risk in South Dakota.

15. Western, with the involvement of B&W, issued a General Change Endorsement as Endorsement #3 ("End. #3") to the Policy adding Physical Damage open lot coverage.

16. A true and correct copy of End. #3 is attached hereto as Exhibit A.

17. End. #3 indicated an effective date of June 1, 2017.

18. Western, with the involvement of B&W, also created and issued a Declarations Page for End. #3, a true and correct copy of which is attached hereto as Exhibit B.

19. The Declarations Page for End. #3 noted the following terms for Physical Damage coverage: $400,000 "Limit of insurance;" $1,000 "Deductible for all perils for each covered 'auto;'" and $5,000 "Maximum Deductible for all 'loss' in any one event" (hereinafter the "$5k Max. Provision").

20. The Declarations Page for End. #3 was on a form identified as WHI 26-0434.

21. The Declarations Page for End. #3 indicated an effective date of June 1, 2017.

22. End. #3 and the End. #3 Declarations Page expanded the coverage available under the Policy to provide coverage for damage to Plaintiff's covered automobiles caused by hail.

23. This expansion in coverage increased Plaintiff's premium by $17,598 per year.

24. Prior to agreeing to this Policy change and increase in premium, Plaintiff was concerned with the $1,000 deductible per vehicle because many of the used vehicles it carried on its lot had a value equal to or not much greater than $1,000.

25. Plaintiff agreed to End. #3 and the increased premium in part because the Endorsement included the $5k Max. Provision.

26. On July 11, 2017, a hail storm moved through Watertown, South Dakota, causing hail damage to Plaintiff's inventory of automobiles.

27. Plaintiff reported this loss to its local agent on July 11, 2017.

28. Plaintiff's local agent reported the loss to B&W, who reported it to Western, on or about July 12, 2017.

29. Under the terms of the Policy in existence on July 11, 2017, the hail damage to Plaintiff's inventory of automobiles qualified as a covered loss.

30. Shortly after the loss, Plaintiff was assured by representatives of the two Defendants that the loss would be covered and that the $5k Max. Provision was in place.

31. Plaintiff also reviewed the End. #3 Declarations Page to confirm the $5k Max. Provision was in place.

32. On July 22, 2017, an adjuster sent on behalf of Western came to Plaintiff's lot to inspect and value the loss.

33. Following the inspection, the adjuster asked that Plaintiff provide additional information about its damaged automobiles.

34. Plaintiff complied with the adjuster's request in the week following the July 22, 2017 inspection.

35. Around that time, the adjuster represented to Plaintiff that a check covering the loss would be sent out to Plaintiff by Tuesday or Wednesday, August 2 or 3, 2017.

36. One of Plaintiff's shareholders and operators, Tom Halvorson, called the adjuster on August 1, 2017 to follow-up on the status of Plaintiff's claim and to reiterate that Plaintiff needed to be updated so that it could proceed with trying to sell the damaged inventory to minimize its losses.

37. Plaintiff was concerned with the delays because other lots from around the geographic area had already resolved their claims related to the same storm while Western appeared to be delaying.

38. During the August 1, 2017, telephone call, for the first time, the adjuster told Plaintiff that the Policy did not have a maximum deductible for the July 11, 2017, loss.

39. Plaintiff was confused by this assertion because the Declarations Page for End. #3, that became effective June 1, 2017, and the prior representations made to Plaintiff by representatives of the two Defendants, indicated the Policy contained the $5k Max. Provision.

40. On or about August 3, 2017, Western and/or B&W unilaterally issued General Change Endorsement #12 ("End. #12") to the Policy, a true and correct copy of which is attached hereto as Exhibit C.

41. End. #12 stated "[i]n consideration of no additional premium, it is hereby understood and agreed that form WHI 26-0496 Deductible for Windstorm, Hail, Earthquake, and Flood is added to the Policy."

42. By its terms, a Form WHI 26-0496 can be included with an open lot Property Damage Endorsement like End. #3 to adjust the Maximum Deductible Provisions as they relate to a loss caused by windstorm, hail, earthquake, or flood.

43. Western and/or B&W unilaterally backdated End. #12 to indicate an "effective date" of June 1, 2017.

44. Western and/or B&W also issued a Supplemental Declarations Page for End. #12, a true and correct copy of which is attached hereto as Exhibit D.

45. The End. #12 Declarations Page was on the Form WHI 26-0496.

46. The End. #12 Declarations Page indicated that the $5k Max. Provision found in the previously issued End. #3 would not apply to a loss caused by windstorm, hail, earthquake, or flood.

47. Like with End. #12, Western and/or B&W unilaterally backdated the End. #12 Declarations Page to indicate an "effective date" of June 1, 2017.

48. The effect of Western and/or B&W's unilateral addition of End. #12 and the backdating of these items was intended to mislead Plaintiff and others about the extent of coverage available to Plaintiff on the July 11, 2017 date of loss.

49. At no time has Western and/or B&W claimed that Plaintiff's losses were not covered under the terms of the Policy and, in early August of 2017, a check to Plaintiff for payment of the insurance claim was issued.

50. The payment did not comply with the $5k Max. Provision from End. #3.

51. Plaintiff initially refused to cash the August of 2017 check until the $5k Max. Provision was honored.

52. To date, Western and/or B&W have continued to take the position that the $5k Max. Provision does not need to be honored, instead relying upon the unilaterally issued and backdated End. #12.

## COUNT 1 – BREACH OF CONTRACT

53. Plaintiff reasserts Paragraphs 1-52.

54. The Policy, along with End. #3, provided by Western and/or B&W to Plaintiff in exchange for Plaintiff's payment of premiums amounted to a legally enforceable promise in the form of a contract of insurance.

55. When Western failed to comply with the provisions of End. #3 and the $5k Max. Provision, it breached the insurance contract.

56. The breach caused Plaintiff clearly ascertainable damages in an amount to be proven at trial.

## COUNT 2 – STATUTORY ENTITLEMENT TO ATTORNEY'S FEES

57. Plaintiff reasserts Paragraphs 1-56.

58. Western's failure to comply with the $5k Max. Provision is vexatious and without reasonable cause such that Plaintiff is entitled to recover its attorney's fees under SDCL 58-12-3.

59. Western and/or B&W's addition and dissemination of End. #12 and the End. #12 Declarations Page after the date of the loss, along with backdating these items to make it appear as if they were effective prior to the date of loss, was deceptive and misleading in violation of SDCL 58-33-6, entitling Plaintiff to recovery of attorney's fees under SDCL 58-33-46.1.

## COUNT 3 – TORTIOUS BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

60. Plaintiff reasserts Paragraphs 1-59.

61. Plaintiff was entitled to benefits under the Policy as a result of damage to its inventory of vehicles from the hail storm on July 11, 2017.

62. On the date of the loss, Plaintiff had coverage limits delineated by the End. #3 Declarations Page of $400,000, with a $1,000 deductible per vehicle and the $5k Max. Provision.

63. The July 11, 2017 hail storm constituted a single event for which the $5k Max. Provision was applicable.

64. Prior to the date of loss, Western and B&W knew, or should have known, that End. #3 was issued without End. #12 or any other endorsement that would have waived the $5k Max. Provision.

65. Western and B&W knew, or should have known, there was no reasonable basis to deny that Plaintiff was entitled to payment and application of the $5k Max. Provision.

66. When Western and/or B&W were put on notice of Plaintiff's claim on or around July 12, 2017, instead of conducting a reasonable and prompt investigation of the claim, they looked for ways to minimize the value of that claim to Plaintiff's detriment.

67. Western and/or B&W knew, or should have known, that timeliness of resolving the investigation was critical to the sustainability of Plaintiff's high inventory turnover business.

68. Western and/or B&W's delays in investigating and processing Plaintiff's claim were intended to put Plaintiff in a position of weakened bargaining position with regard to the amount Plaintiff would be willing to accept to resolve its claim.

69. To further the scheme of minimizing the payout to Plaintiff and to mislead and further weaken Plaintiff's position, and in contrast to its prior admissions, Western and/or B&W claimed the $5k Max. Provision did not apply to Plaintiff's loss.

70. To further the scheme of minimizing the payout to Plaintiff, and to mislead and further weaken the Plaintiff's position, Western and/or B&W unilaterally issued End. #12 and the End. #12 Declarations Page to attempt to take away the $5k Max. Provision.

71. Finally, to further the scheme of minimizing the payout to Plaintiff and to mislead and further weaken the Plaintiff's position, Western and/or B&W backdated End. #12 and the End. #12 Declarations Page to make it appear that End. #12 was in place and effective prior to the July 11, 2017 date of loss.

72. Western and/or B&W's conduct as described above breached the duty of good faith and fair dealing owed to Plaintiff.

73. Western and/or B&W's conduct as described above caused Plaintiff financial harm as well as frustration, aggravation, distress, wasted time, annoyance, and other harms, along with causing Plaintiff's operator personal harm.

74. Upon information and belief, Western and/or B&W's conduct in delaying its investigation, ignoring and misapplying the Policy, and in deceitfully trying to backdate and insert provisions into the existing Policy, not only caused damage to Plaintiff, but also has harmed and continues to harm other policy holders by increasing Western's denial of claims and reducing the amounts Western pays in claims, and such conduct amounts to oppression, fraud, or malice, and willful and wanton reckless disregard to the rights of policy holders, such that punitive and exemplary damages are necessary to punish Defendants and deter Defendants and others from employing these tactics on other policyholders.

### COUNT 4 – NEGLIGENT MISREPRESENTATION

75. Plaintiffs reassert Paragraphs 1-74.

76. Western and/or B&W mispresented the terms of the Policy and available coverage when the $5k Max. Provision was made a part of the Policy prior to the date of the loss.

77. Prior to the hail claim being made, Western and/or B&W did not have reasonable grounds to believe that the $5k Max. Provision would be applied to a hail claim made by Plaintiff.

78. Western and/or B&W represented the existence of the $5k Max. Provision with the intent that Plaintiff would be induced to increase the premiums it was paying and rely on the coverage being provided.

79. Plaintiff relied upon the $5k Max. Provision and other terms of the Policy in paying additional premiums and in concluding it had adequate coverage for its business and inventory.

80. If Western and/or B&W are allowed to rely upon End. #12 to ignore the $5k Max. Provision for any reason, Plaintiff will be damaged to the extent of the difference between the

amount Western claims is due under the Policy as compared to the amount due if the $5k Max. Provision is applied, plus harm in the form of delayed payment as well as frustration, aggravation, distress, wasted time, annoyance, and other harms, along with causing Plaintiff's operator personal harm.

**WHEREFORE,** Plaintiff respectfully requests:

1. A judgment against the Defendant for damages in an amount to be proven at trial on each claim of the Complaint;

2. Prejudgment interest as allowed by law;

3. Punitive damages as determined by the jury at trial;

4. Other relief as deemed appropriate and necessary, including nominal damages; and

5. Attorney's fees as allowed by law pursuant to SDCL 58-12-3 and SDCL 58-33-46.1.

Dated this 14th day of March, 2018.

Michael F. Tobin
Matthew D. Murphy
BOYCE LAW FIRM, L.L.P.
300 South Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
mftobin@boycelaw.com
mdmurphy@boycelaw.com
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues in triable to a jury.

Dated this 14th day of March, 2018.

_____
Michael F. Tobin
Matthew D. Murphy
BOYCE LAW FIRM, L.L.P.
300 South Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
mftobin@boycelaw.com
mdmurphy@boycelaw.com
Attorneys for Plaintiff